■ In the Matter of JOHN V. HADAMIK, Appellant, v TERRI L. HADAMIK, Respondent. SANDRA J. GARUFY, as Law Guardian, Appellant. (And Six Other Related Proceedings.) [644 NYS2d 814] —Yesawich Jr., J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered August 23, 1994, which, *inter alia*, granted respondent's cross application, in seven proceedings pursuant to Family Court Act articles 6 and 8, for, *inter alia*, sole custody of the parties' child.

The child at issue in this proceeding (hereinafter J.R.) was born out of wedlock in October 1990, and resided with respondent until the parties were married in August 1991. After marrying, the parties lived together until January 1994, with J.R. and children from their previous marriages, in a home in Vestal, Broome County, which they purchased jointly. During the last half of 1993, the relationship became increasingly acrimonious, to the point where the parties actually exchanged blows on several occasions. During this time, petitioner became suspicious that respondent was engaged in an extramarital affair and enlisted the aid of his friends and relatives to confirm his suspicion.

In late 1993, the parties petitioned and cross-petitioned for custody of J.R. and charged each other with having committed various family offenses. Temporary orders of protection were issued, the second of which decreed that the Vestal home was to be J.R.'s residence, and directed that he was to spend overnights there. In early December 1993, petitioner brought three petitions charging respondent with willfully disobeying the protective orders by, *inter alia*, removing J.R. from the home overnight.

After a hearing at which each party testified at length and several other witnesses were called, Family Court awarded sole custody of J.R. to respondent; petitioner was granted lib-

eral visitation. The court also issued a mutual order of protection and dismissed the violation petitions, finding that petitioner had not proven that respondent's disobedience was willful. Petitioner appeals.

Petitioner's primary contention is that Family Court's custody determination lacks a sound basis in the record and is contrary to the weight of the credible evidence introduced at the hearing. We disagree. In reaching its disposition, Family Court appropriately weighed the relevant factors (*see, Matter of Belden v Keyser*, 206 AD2d 610, 611; *Matter of Saunders v Saunders*, 60 AD2d 701) and considered respondent's extramarital affair in the proper light (*see, Matter of Hess v Pedersen*, 211 AD2d 1000, 1001; *Matter of Saunders v Saunders, supra*, at 701-702), concluding—not improperly, in our view—that it had no appreciable effect on J.R.'s welfare.

Although, as petitioner notes, respondent's continual denial of that affair, in the face of substantial evidence to the contrary, bears on her credibility, the record as a whole supports Family Court's conclusion that neither party's lapses in judgment were such as to raise significant doubt as to his or her parenting ability. Notably, Family Court found the testimony of petitioner's former wife, to the effect that J.R. had been found outside in the snow without shoes while respondent was purportedly caring for him, to be incredible and we find no reason to reject this assessment. According due deference to the court's evaluation of the evidence bearing on each party's character and credibility (*see, Matter of Snoddy v Snoddy*, 187 AD2d 884, 885; *cf., Matter of Ebert v Ebert*, 38 NY2d 700, 703), we cannot say that it erred in concluding that both are fit parents.

And, petitioner's contrary suggestion notwithstanding, we concur in Family Court's finding that he must at least share responsibility for his loss of employment, and the failure to avail himself of the opportunity to maintain his health insurance coverage thereafter, as it was his misconduct—stealing from his employer (which, although first reported by respondent, was later confirmed by the employer's in-house investigation)—that precipitated his firing. Furthermore, petitioner, just like respondent, expressed his anger inappropriately and demonstrated a lack of self-control by damaging the marital residence on at least one occasion and by physically abusing respondent.

Despite their mutual transgressions (*see, Matter of Muzzi v Muzzi*, 189 AD2d 1022, 1024), there was ample proof that both parties were, for the most part, good parents toward all of the

children. That being the case, Family Court did not err in focusing on the parties' financial and living arrangements, the activities each has undertaken to advance J.R.'s emotional and intellectual development (he suffers mildly from Down's syndrome), and the extent to which the parties have interacted with him in the past. The evidence in this regard is that respondent has a reasonable income from several sources and an adequate home for herself and her children, including J.R., while petitioner was admittedly not bringing in any significant income and was living with his parents, with whom J.R. had to share a bedroom; that respondent obtained books and information relevant to J.R.'s particular learning problems, arranged for his evaluation and special schooling, and worked with him one-on-one, using learning aids she procured, to improve his physical and language skills; and that respondent was his physical custodian and saw to all of his daily needs for the 10 months before the parties were married. Even after the parties were married, it was respondent who arranged for and invariably took J.R. to his many doctors' appointments and continued to be responsible for the bulk of his care, while petitioner worked outside the home. Although the Law Guardian urged that petitioner be granted custody, that recommendation is not determinative (see, Matter of Perry v Perry, 194 AD2d 837, 838), particularly where, as here, it is premised on subjective judgments as to character and credibility which must, in the final analysis, be made by Family Court.

The remainder of petitioner's arguments merit little comment. His assertion that Family Court should have issued specific directions with respect to when visitation is to occur is unpersuasive, at this juncture, for there has been no showing that the parties have been unable to agree on visitation matters; in any event, they are free to re-petition the court without a showing of change in circumstances if petitioner's concerns that respondent may frustrate his visitation rights are borne out. The court's finding that respondent's conduct in removing J.R. from the marital home was not willful is supported by her testimony as to the reasons why she did so, which the court implicitly found credible. Lastly, petitioner's disagreement with the issuance of the final order of protection is academic, as that order has expired.

Cardona, P. J., Crew III and Casey, JJ., concur.

Mikoll, J. (dissenting). I respectfully dissent.

Family Court's decision awarding respondent custody of the parties' then three-year-old child should be reversed. Family Court failed to apply the best interest of the child test (see, Esch-

*bach v Eschbach*, 56 NY2d 167, 171). The court relied on the following as relevant factors in awarding custody to respondent: that the child's first 10 months were spent with respondent before the parties married, that respondent secured information on the needs of a Down's syndrome child, her present financial ability to care for the child and, finally, that it found her to be a fit and loving mother. The record indicates that these considerations are belied by weightier ones in the record which undercut the appropriateness of the custody award. While in the evaluation of the evidence we deem to defer to the trial court (*see, Matter of Irene O.*, 38 NY2d 776, 777), the totality of the circumstances and the requisite factors must be reviewed (*see, Eschbach v Eschbach, supra*, at 174).

Family Court found petitioner to be a fit parent who nurtured the child early on, even before the marriage of the parents. I think the court failed to put into the balance some other disturbing qualities of respondent. For instance, the record is replete with worrisome incidents reflecting adversely on respondent's character, stability and dependability as a caretaker of the child. The litany includes leaving the infant unattended on a number of occasions. This included the occasion when the child was found wandering 800 feet from the home while in her care and was returned by a stranger. The other young children were often left with this infant while respondent left for extensive periods of time, which I deem inappropriate considering the caretakers' youthfulness and respondent's failure to advise anyone where she could be located.

Once respondent commenced her meretricious relationship with a co-worker (which she denied under oath but which was established by photographs and eyewitness testimony), she kept late hours, returning home under the influence of liquor. The resultant familial crisis brought on by her misbehavior erupted in arguments adversely affecting the life of the family and particularly the children.

It is to be noted that respondent has so little self-control that she fought physically with her other children numerous times and physically assaulted petitioner, at one point splitting open his lip. Particularly regretable is the fact that she caused petitioner to lose his employment from IBM where he worked for 16 years after accusing him of theft from his employer, which he vehemently denied. As a result of her vengefulness to him, the family lost not only their major source of income but health insurance for the vulnerable child whose custody is being addressed here. When respondent finally moved out, she

caused damage to the home by ripping out the front door, damaging pipes and throwing clothes in the toilets, clogging the facilities.

I find Family Court's decision to credit respondent with a more stable financial position to care for the child, because she now has a waitressing job and Social Security benefits for the child, utterly illogical in view of the financial chaos she brought down on the family. I note that the Law Guardian for the child strongly recommended placement with petitioner, who now lives with his parents in a home neighboring the one the child lived in, would have the support of his parents in helping to care for the child and is now self-employed. The balance is definitely in petitioner's favor on the issue of custody.

Family Court's decision lacks a sound and substantial basis in the record and should be reversed, with custody of the child awarded to petitioner.

Ordered that the order is affirmed, without costs.