◼ In the Matter of YOUNGOK LIM, Appellant, v SANGBOM LYI, Respondent. (And Another Related Proceeding.) [751 NYS2d 617] —Kane, J. Appeal from two orders of the Family Court of Tompkins County (Rowley, J.), entered October 16, 2001, which, inter alia, granted respondent's cross application, in two proceedings pursuant to Family Ct Act articles 6 and 8, for custody of the parties' child.

The parties, Korean citizens and Cornell University graduate students, are the parents of a son, born in January 2000. The parties lived together with their son until September 5, 2000, when petitioner brought criminal charges against re-

spondent based upon allegations of spousal and child abuse. Orders of protection were issued preventing respondent from having contact with either petitioner or the child. Based upon its investigation, child protective services determined that the allegations of child abuse were unfounded.

On September 14, 2000, petitioner commenced a proceeding seeking sole custody of the child and, on September 26, 2000, she filed a family offense petition alleging that respondent physically abused the child; thereupon respondent cross-petitioned for sole custody. Following a fact-finding hearing, Family Court granted sole custody of the child to respondent and allowed petitioner visitation privileges. Petitioner appeals, contending that Family Court erred and abused its discretion in determining the best interests of the child and erred in its admission of evidence from child protective services.

We affirm. In adjudicating custody rights, the paramount factor to be considered is the best interests of the child (*see Eschbach v Eschbach*, 56 NY2d 167, 171; *Matter of Lattuca v Natale-Lattuca*, 293 AD2d 805, 805; *Matter of Bates v Bates*, 290 AD2d 732, 732). Among the factors to be considered by the court in making a custody determination are the age of the child, the home environment of each parent, the overall fitness of each parent and the ability of each parent to foster the intellectual and emotional development of the child (*see Matter of Strempler v Savell*, 287 AD2d 827, 827; *Matter of Storch v Storch*, 282 AD2d 845, 846, *lv denied* 96 NY2d 718). Furthermore, "the effect that an award of custody to one parent might have on the child's relationship with the other parent" is also a proper factor to be considered by the court (*see Bliss v Ach*, 56 NY2d 995, 998). Evidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the child is " 'so inconsistent with the best interests of the child[ ] as to, per se, raise a strong probability that [the offending party] is unfit to act as custodial parent' " (*Finn v Finn*, 176 AD2d 1132, 1133, quoting *Entwistle v Entwistle*, 61 AD2d 380, 384-385, *appeal dismissed* 44 NY2d 851; *see Matter of Turner v Turner*, 260 AD2d 953, 954).

A custody determination is ordinarily a matter of discretion for the trial court (*see Eschbach v Eschbach, supra* at 173-174), and should be set aside only if it lacks a sound and substantial basis in the record (*see Matter of Bates v Bates, supra* at 733; *Matter of Hudson v Hudson*, 279 AD2d 659, 661; *Matter of Caccavale v Brown*, 271 AD2d 717, 718). Here, we conclude that the present record provides a sound and substantial basis for Family Court's grant of custody to respondent. The evi-

dence adduced at the fact-finding hearing showed that petitioner and respondent were both loving and caring parents; respondent was very involved in petitioner's prenatal care, eagerly researching pregnancy, parenting, breast-feeding and other related issues. The record further reveals that respondent was present at their son's birth and has kept a daily diary of his activities and development since that time. The parties visited the child's doctor together and were involved in his daycare program, dropping him off together in the morning and often visiting him during their lunch breaks. Despite this, petitioner claimed that respondent abused and mistreated both petitioner and their son. Petitioner's mother corroborated this position by testifying that respondent displayed anger and aggression, including kicking a humidifier on one occasion. These problems culminated in a September 3, 2000 incident wherein petitioner testified that respondent degraded petitioner and her family for a three to four hour period, thereby prompting her to seek help from the Cornell police. In stark contrast to petitioner's complaint, friends observed that on September 4, 2000, petitioner and respondent were acting like newlyweds, treating each other with love and affection and, at the hearing, petitioner testified that as of September 5, 2000, she was not unhappy with her marriage.

Additionally, petitioner's claims that respondent hit, threw things at and injured both petitioner and the child, as alleged in both her written complaint to the Cornell police[1] and in a statement she made to child protective services investigator Mary Barnes, are contradicted by the record. At the fact-finding hearing, petitioner testified that respondent had never struck her and one witness testified that petitioner told her that she had planned to drop all criminal charges against respondent after she gained custody of their son. Furthermore, an examination of the child by his pediatrician failed to indicate any injuries tending to support petitioner's claims of abuse. In fact, petitioner later admitted to Barnes that respondent had never bruised or otherwise injured the child. Tellingly, not one person who saw the child on a daily basis testified that they had concerns about the child's physical health or that he was being mistreated. Moreover, after the parties separated, while the child was in respondent's care and was taken to the hospital with a high fever and later diagnosed with pneumonia, petitioner, upon her arrival at the hospital, vociferously objected to respondent's presence and demanded that he be given no information about the child's diagnosis.

---

1. After petitioner filed charges with the Cornell police, the matter was referred to the City of Ithaca Police Department.

Petitioner's claim that respondent demanded control of the parties' relationship is also rebutted by the record. Respondent taught petitioner how to drive a car, encouraged her to become more independent by obtaining a United States driver's license, contributed money to a bank account in petitioner's name alone so that she could have her own credit card, and they attended many social gatherings together. Unquestionably, respondent was not without fault in this case,[2] but the record contains many inconsistencies surrounding petitioner's allegations of control and abuse. Family Court was empowered to and did resolve the various factual disputes in favor of respondent and concluded that petitioner lacked credibility. It is well established that because "Family Court is in the best position to evaluate the credibility and character of the parties and witnesses, its findings are to be afforded great deference in custody matters" (*Matter of Weeden v Weeden*, 256 AD2d 831, 833, *lv denied* 93 NY2d 804; *see Eschbach v Eschbach*, 56 NY2d 167, 173-174, *supra*).

Here, Family Court's finding that petitioner exaggerated claims against respondent in an attempt to have him arrested, paired with the testimony that petitioner intended to drop all criminal charges against respondent once she gained custody of their son, support the court's finding that petitioner purposely interfered with respondent's contact with the child. Petitioner's allegations that respondent had injured the child were found to be baseless and, by making such accusations, petitioner needlessly subjected the child to an investigation by child protective services, placing her own interests above those of the child. The fact that the Law Guardian advocated that petitioner be granted custody is not determinative (*see Matter of Bates v Bates*, 290 AD2d 732, 733, *supra*) "particularly where, as here, it is premised on subjective judgments as to character and credibility which must, in the final analysis, be made by Family Court" (*Matter of Hadamik v Hadamik*, 229 AD2d 612, 614). Viewed as a whole, the evidence demonstrates that Family Court's findings have a sound and substantial basis in the record and should not be disturbed.

Petitioner and the Law Guardian next argue that Family Court erred by admitting the testimony of Barnes and the report of the child protective agency. Although unfounded child abuse reports are required to be sealed (*see* Social Services Law § 422 [5]), such reports may be introduced into evidence

---

2. Specifically, respondent violated the order of protection by attempting to contact petitioner and the child through third parties and secretly repossessed a car shared by the parties, without giving notice to petitioner.

"by the subject of the report where such subject * * * is a plaintiff or petitioner in a civil action or proceeding alleging the false reporting of child abuse or maltreatment" (Social Services Law § 422 [5] [b] [i]). Here, although respondent did not commence the proceeding in the first instance, he did cross-petition for sole custody. In his cross petition, respondent specifically stated that petitioner "bombarded [him] with completely false allegations in criminal and family court of child abuse." Since respondent unequivocally alleged the false reporting of child abuse, and is considered a petitioner with respect to this claim (*see Ferguson Elec. Co. v Kendal at Ithaca*, 274 AD2d 890, 892; *L & L Painting Co. v Columbia Sussex Corp.*, 225 AD2d 670, 670), the admission of the unfounded report is proper. Likewise, the testimony of Barnes was admissible.

Mercure, J.P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the orders are affirmed, without costs.