█ In the Matter of ELIZABETH M., a Mentally Retarded Person. MENTAL HYGIENE LEGAL SERVICE, Appellant; DEAN M. et al., as Guardians of ELIZABETH M., Respondents. (Proceeding No. 1.) In the Matter of ELIZABETH M., a Mentally Retarded Person. DEAN M. et al., as Guardians of ELIZABETH M., Respondents; MENTAL HYGIENE LEGAL SERVICE, Appellant, et al., Respondent. (Proceeding No. 2.) [817 NYS2d 181]—

Peters, J. Appeals (1) from an order of the Surrogate's Court of Albany County (Doyle, S.), entered January 25, 2006, which, inter alia, dismissed petitioner's application, in proceeding No. 1 pursuant to SCPA article 17-A, for an order directing that Elizabeth M. be afforded life-sustaining treatment, and (2) from an order of said court, entered March 21, 2006 which, in proceeding No. 2 pursuant to SCPA article 17-A, inter alia, affirmed the decision of petitioners to withhold life-sustaining treatment from Elizabeth M.

Elizabeth M. is a 23-year-old resident of the Springbrook facility located in the Town of Oneonta, Otsego County. She suffers from spina bifida complicated by Arnold-Chiari malformation and shunted hydrocephalus, profound mental retardation and advancing chronic renal insufficiency. Since June 2000, her attending physician, James Listman, as well as her parents, who are also her legal guardians as a result of a 2001 judicial decree, have contemplated withholding life-sustaining treatment (hereinafter dialysis) for her. In March 2005, Mental Hygiene Legal Service (hereinafter MHLS) learned from Springbrook that Elizabeth M. was diagnosed with renal insufficiency which would ultimately result in her death without the commencement of dialysis. Seeking to investigate her medical condition, Howard Lifland, a board certified nephrologist, was asked to provide MHLS with his opinion as to Elizabeth M.'s current medical condition and her suitability for dialysis. With the guardians' consent, Lifland reviewed her medical records and informed MHLS that dialysis was not yet medically necessary. Thereafter, when MHLS sought to have Lifland perform a physical examination of Elizabeth M., the guardians ultimately denied him access. Subsequent reviews of multiple evaluations of Elizabeth M.'s medical records and bloodwork from December 2005 led Lifland to conclude that dialysis was now medically necessary, despite the contrary opinion by Listman.

Based upon Lifland's conclusion, MHLS commenced proceeding No. 1 on December 30, 2005, seeking, among other things, an order requiring the guardians to comply with SCPA 1750-b which governs health care decisions for mentally retarded patients. Surrogate's Court dismissed MHLS's application on the record on January 13, 2006 as premature since Listman had not yet determined that the commencement of dialysis was

medically necessary. The order, however, was not entered until January 25, 2006, a day after the guardians were informed by Listman that dialysis was now medically necessary. The guardians thereafter provided him with their consent to withhold treatment and he communicated that decision to MHLS. By letter dated January 26, 2006, MHLS notified Listman of its objection, grounded upon the absence of specific compliance with the pertinent steps enunciated in SCPA 1750-b. On February 6, 2006, the guardians commenced proceeding No. 2 for an order affirming their instructions to withhold dialysis. After numerous hearings, Surrogate's Court affirmed the guardians' decision by order entered March 21, 2006. MHLS appeals both orders.

Addressing first proceeding No. 1, we note that despite the fact that a hearing had already been held in proceeding No. 2, the issue raised in proceeding No. 1 qualifies it as an exception to the mootness doctrine (*see Matter of M.B.*, 6 NY3d 437, 447 [2006]). As to the merits of Surrogate's Court's determination to dismiss that proceeding as premature, we agree that MHLS's interpretation of SCPA 1750-b is overly constrained regarding when notification of a guardian's decision to withhold life-sustaining treatment must be communicated. Despite the guardians' long-standing belief that they were going to withhold dialysis from Elizabeth M. when it became medically necessary, both the guardians and the guardian ad litem confirmed that Listman had not yet determined, at the time of proceeding No. 1, that dialysis was medically necessary. As SCPA 1750-b (4) (e) specifies that the attending physician must notify MHLS or others at least 48 hours prior to the implementation of a decision to withhold life-sustaining treatment, the clear statutory language supported Surrogate's Court's determination to dismiss that proceeding as premature (*see generally Matter of M.B., supra*).

Next addressing MHLS's contention that the stringent pre-petition conditions of SCPA 1750-b were not complied with in proceeding No. 2 before the guardians and Listman sought approval to withhold dialysis, we turn to SCPA 1750-b which emphasizes that all such decisions be based "solely and exclusively on the best interests of the mentally retarded person" (SCPA 1750-b [2] [a]). With one of the threshold determinations in SCPA 1750-b being a confirmation that the patient lacks capacity to make these decisions, we note that the appointment of the guardians here was prior to the enactment of SCPA 1750-b (*see Matter of M.B., supra* at 451-453).

Next addressing whether the "medical condition[,] other than

such person's mental retardation which requires life-sustaining treatment, is irreversible and . . . will continue indefinitely; and [that] the life-sustaining treatment would impose an extraordinary burden on such person" (SCPA 1750-b [4] [b] [i] [C]; [ii]), the guardians had to first affirm to Listman that it was their desire that treatment be withheld and such desire had to be expressed in Elizabeth M.'s medical chart (*see* SCPA 1750-b [4] [c], [d]). Only when these conditions were satisfied could "[t]he physician . . . issue the appropriate medical orders or object to the guardian[s'] decision but, in either case, the decision to end life-sustaining treatment cannot be implemented for 48 hours" (*Matter of M.B., supra* at 443; *see* SCPA 1750-b [4] [e]).

Here, the record is replete with references to discussions among Listman and the guardians as far back as 2000 regarding the irreversibility of Elizabeth M.'s end-stage renal insufficiency and all were in agreement that the implementation of dialysis should not be pursued when it became medically necessary. In September 2005, Listman again confirmed his opinion that although dialysis was not yet medically indicated, Elizabeth M.'s best interests would not be served by its use. This opinion was thereafter confirmed by another consulting physician and reviewed by the Center for Bioethics and Humanities. Notation of the consultation by the other physician was made in Elizabeth M.'s medical chart. When it was determined on January 24, 2006 that Elizabeth M.'s physical condition now required the commencement of dialysis, the guardians sent a letter to Listman informing him of their decision and thereafter detailed the requisite steps that he needed to accomplish before he could comply with their decision.

The guardians further made an overwhelming proffer that dialysis would "impose an extraordinary burden on [the patient] in light of . . . such person's medical condition, other than such person's mental retardation[ ] and . . . the expected outcome of the life-sustaining treatment, notwithstanding such person's mental retardation" (SCPA 1750-b [4] [b] [ii]). These consequences included an exacerbation of Elizabeth M.'s pattern of self-mutilation under similarly stressful circumstances, the likelihood of infection spreading to her brain as a result of the proximity of the dialysis catheter to the already existing shunt and excessive clotting due to her small size. Again, a second physician's opinion fully supported Listman's opinion on this issue. The record further memorialized the guardians long-standing practice of always acting in Elizabeth M.'s best interests. For all of these reasons, including the fact that her

renal insufficiency would ultimately result in her death since she is not a candidate for a kidney transplant, we agree with Surrogate's Court that there was full compliance with the statutory directives, supported by a sufficient evidentiary proffer.

Finding no merit to any remaining contentions that the evidentiary rulings of Surrogate's Court were an abuse of its discretion (see Matter of Stevens, 252 AD2d 654, 656 [1998]) or that there was error in its denial of MHLS's request for a physical examination of Elizabeth M., we affirm both orders.

Cardona, P.J., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.