Spain, J.
(1) Appeal from an order of the Surrogate’s Court of Sullivan County (McGuire, S.), entered July 13, 2011, which, among other things, granted respondent’s application, in two proceedings pursuant to SCPA article 17-A, for respondent’s appointment as guardian of Kevin Z., and (2) cross appeals from an order of said court, entered July 29, 2011, which, among other things, granted petitioner’s application for an order of visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of Kevin Z. (born in 1992) whose medical diagnoses include autism, mild mental retardation and developmental delay. Kevin has lived with the father in Rock Hill, Sullivan County for most of the last decade. In May 2010, Family Court, Sullivan County, awarded the father physical custody, on consent, in a joint custody arrangement which included, among other provisions, parenting time for the mother on alternate weekends, three weeks during the summer, specific holiday time and additional time as agreed. Shortly thereafter, in anticipation of Kevin’s 18th birthday, the mother filed a petition in Surrogate’s Court, Sullivan County, pursuant to SCPA article 17-a, seeking to be appointed guardian of Kevin’s person and property and the father filed a cross petition seeking the same relief. Following a hearing, the court appointed the father as Kevin’s guardian and, in a subsequent order, granted parenting time to the mother, limited to alternate weekends. The mother now appeals from the order of guardianship and both parents appeal from the visitation order.
*1270 As there is no dispute with respect to Kevin’s disabilities, Surrogate’s Court was authorized to appoint a guardian of Kevin’s person and/or property if such appointment is in his best interests (see SCPA 1750, 1750-a [1]; 1754 [5]). Initially, the parents did not object to the procedural course charted by Surrogate’s Court and do not complain of it now, although counsel for Kevin raises some concerns in that regard. SCPA article 17-A proceedings employ a best interests analysis and, as such, the court likened the present case to an application seeking to modify an existing child custody order. Partially based on the erroneous assumption that the custody order in Family Court was made after a plenary hearing, rather than on consent, the court suggested it was giving res judicata effect to Family Court’s custody “decision” that Kevin’s best interests lie in living with the father, and required the mother to “establish a change in circumstances reflecting a real need for change in order to insure the continued best interest of the child” (Matter of Dobies v Brefka, 83 AD3d 1148, 1149 [2011] [internal quotation marks and citations omitted]; see Matter of Anthony MM. v Jacquelyn NN., 91 AD3d 1036, 1037 [2012]). Generally, child custody and visitation orders are not entitled to res judicata effect, as they are subject to modification (see Matter of Robb v McIntosh, 99 AD2d 571, 571 [1984]; see also Matter of Fraczek v Syczyk, 12 AD3d 973, 975 [2004]). However, “where modification of an existing custody decree is sought, the prior decree and the circumstances on which it was based must be given due consideration because stability is in a child’s best interest” (Matter of Robb v McIntosh, 99 AD2d at 571; see Friederwitzer v Friederwitzer, 55 NY2d 89, 94-95 [1982]).
Here, it is clear that Surrogate’s Court’s best interests determination did not turn solely on Family Court’s prior ruling but, rather, the court conducted a full hearing on the petitions before it, reviewed the evidence, and concluded—based on its own best interests analysis—that the father possessed the better plan for Kevin’s future (cf. People ex rel. Charbonneau v Charbonneau, 34 AD2d 1034, 1034 [1970]). The record reflects that the father has essentially been Kevin’s guardian in his long-term role as custodial parent, and the court correctly required the mother to show that circumstances which led to the Family Court consent order had changed such that a modification of that arrangement was “necessary to protect ‘the personal and/or financial interests’ ” of Kevin (Matter of Garett YY., 258 AD2d 702, 702 [1999], quoting SCPA 1755). Inasmuch as the court undertook an appropriate and complete best interests analysis and concluded that any benefit to be gained by appointing the mother as guardian was outweighed by “the benefits of continu *1271 ity, including the importance of stability in Kevin’s life, and the certainty of the care provided by” the father, the court’s use of the res judicata language was harmless.
Turning to the merits, the mother argues that she demonstrated the requisite change in circumstances and that Kevin’s best interests lie in appointing her as guardian not withstanding that he has been cared for by the father for most of the last decade. The mother cites instances she believes illustrate failings in the father’s care for Kevin, such as permitting him to wear dirty clothes, to engage in purportedly unsafe activities and allegedly delegating some of his care responsibilities to his fiancée. Much of her testimony, however, involved events that predated Family Court’s custody order and were thoroughly addressed at the hearing conducted in this proceeding. In contrast, the record is replete with proof that the mother frequently failed to visit with Kevin, was minimally engaged with his teachers and caregivers, and had no firsthand knowledge of his living conditions. The hearing testimony further suggested that the father became Kevin’s custodial parent out of necessity, in response to the mother’s difficulty coping with his behavior and inability to properly care for him, that Kevin was often agitated and disheveled when he returned from visits with the mother, and that the father felt compelled to stop the visits after the mother threatened to have Kevin committed or arrested. The father has also been actively working to place Kevin in a day program, and the mother was unable to point to anything to suggest that his plan was inappropriate or that her proposal to place Kevin in a residential group home closer to her residence would be preferable for Kevin.
Significantly, Kevin’s guardian ad litem found that the father provided appropriate care for him, raised various concerns about the mother’s “inability to accept the findings and concerns of others,” and recommended that the father be appointed guardian (see SCPA 1755). According deference to the assessments of credibility made by Surrogate’s Court, we find that the mother did not establish a sufficient change in circumstances reflecting a real need for change and that the record fully supports the conclusion that Kevin’s best interests lie in appointing his father as guardian (see Matter of Garett YY., 258 AD2d at 702-703).
The mother further asserts on appeal that, even if the father were appropriately appointed guardian, he should be monitored and required to make periodic reports to Surrogate’s Court, an issue not raised before that court and, thus, not preserved. In any event, Surrogate’s Court continues to have jurisdiction over Kevin after the appointment of a guardian, as well as jurisdic *1272 tion over all matters affecting the guardianship, including the authority to take “such steps and proceedings ... as may be deemed necessary or proper” for Kevin’s welfare (SCPA 1758; see Matter of Yvette A., 27 Misc 3d 945, 950-951 [2010]). In short, the court has “continuing subject matter jurisdiction under SCPA 1758 over all matters affecting the guardian” and, accordingly, is empowered to impose reporting and/or monitoring requirements if and when it sees fit (Matter of Claudia EE., 35 AD3d 112, 117 [2006] [emphasis added]; see Matter of Mark C.H., 28 Misc 3d 765, 787 [2010]; Matter of Yvette A., 27 Misc 3d at 950-951; see also Mental Hygiene Law § 81.31). However, in our view, imposing a monitor at this point to oversee the father’s care seems excessive given the lack of evidence that the care he has provided Kevin has been deficient in any significant respect.
We next reject the father’s assertion that Surrogate’s Court lacked authority to issue the order of visitation after appointing the father as guardian. The mother orally applied for visitation and the parties mutually treated that application as one for permanent visitation. Clearly, the court retains jurisdiction over the guardianship even after an appointment under SCPA 1758 and was authorized to issue an order directing that the mother be provided meaningful access to Kevin if it found this to be in Kevin’s best interests (see Matter of Chaya S. v Frederick Herbert L., 246 AD2d 658, 659 [1998]).
Turning to the terms of that order, the mother argues that she should be afforded the same parenting time to which she was provided under Family Court’s custody order, and Kevin’s counsel has no objection to her obtaining that relief. While the mother did not expressly request that Surrogate’s Court continue the visitation terms of the prior custody order, she requested that a detailed visitation order be issued and, in the absence of such an order, this Court may independently review the record to determine the appropriateness of the parameters of the order (see Matter of Bond v MacLeod, 83 AD3d 1304, 1305 [2011]; cf. Matter of Chiquita J., 170 AD2d 353, 354 [1991], lv denied 78 NY2d 852 [1991]). Having likened the present matter to a custody modification proceeding, the court’s decision to alter the visitation terms of that order—despite finding that no change of circumstances had occurred—is troubling (see e.g. Matter of Kashif II. v Lataya KK., 99 AD3d 1075, 1077 [2012]). While we share the court’s concerns regarding the acrimonious relationship between the parties, in our view a broader and more specific parenting time order would be in Kevin’s best interests. Accordingly, we will remit this matter to Surrogate’s Court to establish—with input from both parties, the guardian *1273 ad litem and Kevin’s counsel—a new detailed and comprehensive visitation order, to be modeled after the Family Court order, which is to include, but is not limited to, holidays, vacation times, and additional visitation to the mother as the parties may agree.
Lahtinen, J.E, Stein and Garry, JJ., concur.
Ordered that the order entered July 13, 2011 is affirmed, without costs. Ordered that the order entered July 29, 2011 is modified, on the law and the facts, without costs, by reversing so much thereof as denied petitioner parenting time during the holidays and vacations as provided in the Family Court order entered May 13, 2010; matter remitted to the Surrogate’s Court of Sullivan County for further proceedings not inconsistent with this Court’s decision, and, pending said proceedings, the visitation terms of said Family Court order shall remain in effect as a temporary order; and, so modified, affirmed.