(May 24, 2013)

■ In the Matter of Joseph P. Michael Feeney, Director of State Operations Region 1 of New York State Office for People with Developmental Disabilities, Appellant; Finger Lakes Health System, Respondent. [966 NYS2d 622]—

Appeal from an order of the Supreme Court, Yates County (W.

Patrick Falvey, A.J.), entered May 2, 2013. The order denied the petition seeking an order authorizing the insertion of a feeding tube under general anesthesia for Joseph P.

It is hereby ordered that the order so appealed from is unanimously reversed on the facts without costs and the petition is granted to the extent of authorizing the insertion of a feeding tube.

Memorandum: Joseph P. is a 55-year-old developmentally disabled man with the functional capacity of a four- to six-month old child. He suffers from profound mental retardation, cerebral palsy with spastic quadriplegia, and curvature of the spine. He resided for 27 years in a group home operated by the New York State Office for People with Developmental Disabilities (OPWDD) until March 2013, when he was admitted to a hospital affiliated with respondent for treatment of a fever and dehydration, and was thereafter diagnosed with aspiration pneumonia. After he aspirated food during his hospital stay, further evaluation revealed that he had dysphagia, i.e., an inability to swallow effectively, owing to compression of his pharynx as a result of hyperextension of his spine. Joseph P.'s attending physician determined that Joseph P. can no longer tolerate food or liquid by mouth, that intravenous feeding was inadequate to meet his nutritional needs, and that, unless he received nutrition and hydration through a feeding tube, he would die within a short period of time.

Joseph P.'s parents, apparently as his guardians under SCPA 1750-b (1) (a), refused to consent to the insertion of a feeding tube. The attending physician and the chief medical officer of the hospital supported the parents' decision to withhold life-sustaining treatment based upon their determination that providing such treatment would impose an extraordinary burden on Joseph P. Upon receiving notice of the parents' decision and the hospital's intention to implement that decision, petitioner objected and commenced the instant proceeding pursuant to section 1750-b seeking, inter alia, an order authorizing surgical insertion of a feeding tube to deliver nutrition and hydration to Joseph P. Following a hearing, Supreme Court denied the petition, concluding that the guardians, through respondent, met their burden of establishing that insertion of a feeding tube would impose an extraordinary burden on Joseph P. in light of his medical condition other than mental retardation and the expected outcome of the life-sustaining treatment, notwithstanding his mental retardation (see SCPA 1750-b [4] [b] [i] [C]; [ii] [B]). Pursuant to section 1750-b (5) (a), the decision to withhold artificially provided nutrition and hydration

remains suspended pending the completion of judicial review, including the determination of this appeal.

"On an appeal from a[n] [order] rendered after a nonjury trial, our scope of review is as broad as that of the trial court" (*Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168, 170 [2005]), and thus this Court may review the record as a whole and grant the relief warranted by the evidence (*see Matter of Hall v Barnes*, 225 AD2d 837, 839 [1996]). In the exercise of that factual review power (*see generally* CPLR 5712 [c] [2]; *Matter of Michael C.*, 170 AD2d 998, 999 [1991]), we conclude that respondent failed to meet its burden of establishing that the withholding of life-sustaining treatment from Joseph P. is in accord with the criteria set forth in the statute. In particular, we agree with petitioner that respondent failed to establish that the feeding tube "poses an extraordinary burden" on Joseph P. (SCPA 1750-b [4] [b] [iii] [B]).

It is undisputed that the "threshold requirement" under section 1750-b for allowing Joseph P.'s guardians to make the decision to withhold life-sustaining treatment has been met (*Matter of M.B.*, 6 NY3d 437, 442 [2006]). Joseph P.'s attending physician also fulfilled the requirements of section 1750-b (4) (a) of "confirm[ing] to a reasonable degree of medical certainty" that Joseph P. "lacks capacity to make health care decisions," and of consulting with another physician "to further confirm" that lack of capacity (*id.*). There is also no dispute that Joseph P. has "a medical condition other than . . . mental retardation which requires life-sustaining treatment, is irreversible and . . . will continue indefinitely" (SCPA 1750-b [4] [b] [i] [C]), and that, without such treatment, he "will die within a relatively short time period" (SCPA 1750-b [1]). The sole issue before us is whether, in view of Joseph P.'s medical condition and the expected outcome of the life-sustaining treatment, i.e., the surgical insertion of the feeding tube artificially providing nutrition or hydration, imposes an "extraordinary burden" on him (SCPA 1750-b [4] [b] [iii] [B]).

Upon our review of the record, we conclude that respondent failed to establish by the requisite clear and convincing evidence that providing nutrition and hydration to Joseph P. by means of medical treatment would impose an extraordinary burden on him (*see* SCPA 1750-b [1], [4] [b] [iii] [B]; *see generally Matter of Westchester County Med. Ctr. [O'Connor]*, 72 NY2d 517, 529-531 [1988]). We agree with petitioner that respondent did not meet that legal burden. The evidence does not support the court's finding that an extraordinary burden would be imposed on Joseph P. based on the factors advanced by respondent, i.e., the difficulty Joseph P. will encounter when he is moved to a new

facility; the need for restraints to prevent him from removing the feeding tube; the continuing risks of aspiration; and the potential complications arising from the feeding tube. Respondent's medical witnesses testified that, although insertion of the feeding tube would not be painful, it could create the need for painful and unpleasant measures such as deep suctioning and restraints, and could place Joseph P. at risk for peritonitis. They further testified that the feeding tube would not eliminate the risk of aspiration, nor would it impede the progression of his spinal curvature, which will ultimately obstruct his breathing and cause his death.

Respondent failed to establish by clear and convincing evidence, however, that any of those factors, alone or in combination, poses the extraordinary burden necessary to support the decision to withhold life-sustaining treatment to Joseph P. (cf. *Matter of Elizabeth M.*, 30 AD3d 780, 781-784 [2006]; *Matter of Baby Boy W.*, 3 Misc 3d 656, 666-667 [2004]; *Matter of AB*, 196 Misc 2d 940, 960-961 [2003]). Petitioner's witnesses, a registered nurse who has provided care to Joseph P. since 1999, and the physician who serves as medical director overseeing the OPWDD facility where Joseph P. resided until his recent hospitalization, testified that he is alert, awake, and communicative, and that he enjoys social interaction and activities. The physician concluded that there was no medical justification for the guardians' decision to withhold life-sustaining care. In addition, he testified that Joseph P. was an excellent candidate for insertion of a feeding tube, and that, if the procedure is performed, he has "an excellent prognosis with many years of life." Moreover, based in part upon their experience with Joseph P., petitioner's witnesses testified that the potentially deleterious consequences of the use of a feeding tube could be mitigated or eliminated.

Thus, upon the exercise of our factual review power, we conclude that respondent failed to meet its burden inasmuch as Joseph P. is "alert, responsive, seemingly pain free and the burdens of prolonged life are not so great as to outweigh any pleasure, emotional enjoyment or other satisfaction that [he] may yet be able to derive from life" (*Matter of DH*, 15 Misc 3d 565, 574 [2007]). We therefore grant the petition.

Finally, we note that the court erred in denying petitioner's purported objection to the request by the guardians and respondent for a "Do Not Resuscitate/Do Not Intubate Order" inasmuch as the record does not indicate that petitioner made such an objection or that respondent sought denial of such objection (*see Matter of Myers v Markey*, 74 AD3d 1344, 1345 [2010]). Present—Peradotto, J.P., Sconiers, Valentino and Whalen, JJ.