■ In the Matter of MICHAEL SLOAND, Respondent, v MARY SLOAND, Appellant. [816 NYS2d 603]—

Spain, J. Appeal from an order of the Family Court of Tompkins County (Rowley, J.), entered July 7, 2004, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

The parties are the parents of a daughter (born in 1996). In September 2002, the parties consented to an order which, among other things, granted sole custody to respondent (hereinafter the mother) with supervised visitation to petitioner (hereinafter the father). The order also required that the father undergo sex offender treatment with Damian Vallelonga, a psychologist who specializes in the evaluation and treatment of sex offenders, and that the mother undergo a psychiatric evaluation and enroll the child in kindergarten at a local school. In July 2003, the mother sent the father a letter informing him that she intended to move with the child to the Village of Fredonia, Chautauqua County. The father then filed a modification petition seeking custody of the child.

In November 2003, Family Court, by order to show cause, granted the father temporary custody—an order which was

continued after an evidentiary hearing in December 2003 pending fact finding—and the mother was granted limited visitation. Family Court subsequently modified its temporary custody order to require that the mother's visitation be supervised. Ultimately, Family Court ordered that both parties submit to a comprehensive psychiatric evaluation by Philip Yorke, a clinical psychologist. After a full fact-finding hearing, Family Court issued a final order granting the father sole custody of the child with unsupervised weekly visitation to the mother and directing that both the child and the father continue to receive counseling with their respective therapists. The mother now appeals.

In order to justify the modification of an existing custody arrangement, a petitioner must show a significant change in circumstances since the prior custodial order (*see Matter of Mathis v Parkhurst*, 23 AD3d 923, 923 [2005]; *Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005]; *Matter of Griffin v Griffin*, 18 AD3d 998, 999 [2005]), considering factors such as the quality of each party's home environment, the length of time the custodial arrangement has been in place, how faithful each party has been to an earlier order and the ability of each party to provide for the child's emotional and intellectual development (*see Matter of De Hamel v Porto, supra* at 894; *Matter of Kemp v Kemp*, 19 AD3d 748, 750 [2005], *lv denied* 5 NY3d 707 [2005]).

The record reflects that the mother suffers from bipolar disorder and voluntarily hospitalized herself for suicidal ideations in 1991. Nevertheless, in 2001 she was pronounced "relatively psychologically stable" and was thus awarded custody of the child in the September 2002 consent order. Since that time, though, her mental state has deteriorated, as evidenced by the testimony of Yorke, who diagnosed the mother as suffering from either schizotypal personalty disorder or undifferentiated schizophrenia—symptoms commonly associated with those who believe they are clairvoyant—and found that without "adequate psychiatric care, [she] lacks the capacity to meet her daughter's emotional needs." Despite this troubling diagnosis, the mother expresses no concern about her mental stability and intends to use her psychic abilities to decide whether to seek treatment.

It is evident that the mother's mental state has directly affected her abilities as a parent. For instance, based on a vision she had experienced, the mother repeatedly warned the child that the father would abuse her and implied to the child that such abuse had already occurred. No evidence exists of any such molestation and, although the mother contacted the police on several occasions complaining that the father had molested the child, such reports were found to be false and no charges were

filed. Such conduct, along with other behavior, was justifiably viewed by Family Court as direct attempts to alienate the child from the father, presenting a sufficient ground to find a change of circumstances (*see Matter of Youngok Lim v Sangbom Lyi*, 299 AD2d 763, 764 [2002]; *Matter of Turner v Turner*, 260 AD2d 953, 954 [1999]; *Finn v Finn*, 176 AD2d 1132, 1133 [1991]).

The record also supports the conclusion that the change in custody is in the child's best interests because the mother is not able to sufficiently foster the child's intellectual development (*see Matter of Adams v Franklin*, 9 AD3d 544, 546 [2004]; *Matter of Carnrike v Kasson*, 291 AD2d 680, 682 [2002]). Among other things, contrary to recommendations made by the child's teacher and principal, the mother intends to home school the child although she lacks teaching experience, has not had full-time employment since 1993, and has failed to respect the child's educational requirements, such as regular and punctual attendance. Accordingly, a change in custody to the father, who—upon gaining temporary custody—immediately enrolled her in school to ensure her continued educational development, is in the child's best interests.

The mother's assertion that granting the father custody is not in the child's best interests is primarily based on the father's history of inappropriate sexual behavior. The father admitted to past indiscretions, including an act of sexual abuse when he was a teenager. Furthermore, though he denies the accusation, one of his adult children from his former marriage testified and accused him of sexual impropriety with her when she was young. Although this history clearly raises concerns about the father's fitness as a parent, after conducting 30 sessions of therapy and subjecting the father to a battery of psychological tests designed to reveal sexual interests, Vallelonga testified that the father has a low risk of reoffending. Vallelonga also interviewed the adult child who claims to have been the victim of sexual misconduct by the father and testified that he seriously questions her credibility. Moreover, though his formal therapy has ended, the father is committed to participate in continuing psychological aftercare comprised of monthly sessions with Vallelonga. Such aftercare will be held in conjunction with the child's continued meetings with her therapist. Based on this "safety plan," one of the mother's expert witnesses conceded that she had "a reasonable level of comfort" with the measures in place to prevent reoffense.

In contrast to the mother's questionable parenting abilities, the record indicates that the father—while far from a perfect parent—has been positive and nurturing. He took the initiative

to find a psychologist for the child once he was granted temporary custody, ensured that the child made her regular appointments and was open to the suggestions of the child's therapist regarding his parenting abilities. In addition, he adjusted his work schedule to accommodate the child's needs, enrolled her in school, encourages her participation in various social activities and is willing to foster a good relationship between the mother and the child. Given the foregoing, and according deference to Family Court's judgment with respect to the credibility and demeanor of the parties and their witnesses (*see Matter of Yizar v Sawyer*, 299 AD2d 767, 768 [2002]), Family Court's decision has a sound and substantial basis in the record and will not be disturbed.

In its final order, Family Court appears to have improperly delegated to the child's therapist the court's authority regarding the expansion or reduction of the mother's access to the child. Any such modification which is not agreed to by the parties shall be made only by the court on the formal application of either parent or the Law Guardian. That aspect of Family Court's order should be reversed.

We have considered the mother's remaining contentions and find them unavailing.

. Cardona, P.J., Mercure, Peters and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as delegated to the child's therapist the authority to modify respondent's access to the child, and, as so modified, affirmed.