In the Matter of Kevin Pecore, Respondent, v Amanda Pecore, Appellant. [824 NYS2d 690]—

Mercure, J.P. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered June 2, 2005, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

The parties are the parents of Sarah (born in July 1999), the child who is the subject of this proceeding. Respondent (hereinafter the mother) also had two children prior to the parties' marriage, Chelsea and Shelby (born in 1987 and 1991, respectively), both of whom petitioner (hereinafter the father) adopted

in 1998. The parties separated in 2002 and were divorced in February 2004. Although Chelsea and Shelby briefly resided with the father at the mother's request in 2004, the parties thereafter consented to an order directing that they have joint legal custody, with the mother having physical custody of the three children and awarding visitation to the father.

In February 2005, the father commenced this proceeding seeking sole custody of Sarah, alleging violence in the mother's home, that the child was not attending school regularly and that the mother violated the prior order by refusing to permit the child to visit him. Following a *Lincoln* hearing, Family Court awarded temporary custody to the father due to concerns about the mother's parenting skills and the child's excessive school absences. Following a series of subsequent hearings, the court entered an order granting the father full legal and physical custody of the child. The mother appeals and we now affirm.

It is well settled that " '[a] modification of an established custodial arrangement will be granted only after a showing of a substantial change in circumstances warranting a change in order to [safeguard] the best interests of the child' " (*Matter of Adams v Franklin*, 9 AD3d 544, 545 [2004], quoting *Matter of Ciannamea v McCoy*, 306 AD2d 647, 647 [2003]). Factors to be considered in making this determination include the quality of the respective home environments, the parents' past performance under the existing agreement and their ability to provide for the child's emotional and intellectual development, and the desires of the child (*see Eschbach v Eschbach*, 56 NY2d 167, 172-173 [1982]; *Matter of Sloand v Sloand*, 30 AD3d 784, 785 [2006]). Particularly relevant here, continued deterioration in the parties' relationship to the point that it "is so acrimonious that it creates an inability to cooperate in raising" the child can constitute a substantial change justifying modification to sole custody (*Matter of Rosario WW. v Ellen WW.*, 309 AD2d 984, 985-986 [2003]; *see Eschbach v Eschbach, supra* at 172).

The record reflects that the parties' relationship is permeated with hostility. The mother admits that she is not on speaking terms with the father, and she has both denied his visitation privileges with the children and attempted to negatively influence the children's opinion of him. In addition to the deterioration of the parties' relationship, school records indicate that while in the mother's custody, Sarah missed 17 days of school between September 2004 and January 2005, hampering her scholastic performance. Many of these absences were undocumented and, while the mother claims that the child was ill, she does not dispute that the child's absences abated and school

performance improved once the father was awarded temporary custody. Moreover, the record evinces that in contrast to the father, the mother failed to provide a stable home for the children, having moved four times between September 2004 and January 2005. Finally, despite her allegation that the father behaved in an abusive manner toward the children, the mother admitted that it was her decision to send her two older daughters to live with him in March 2004 because she could no longer handle them and felt that time with the father could improve the children's behavior. Considering the totality of the circumstances—and despite the father's failure to maintain contact with his two older biological children and the existence of the prior agreement granting physical custody to the mother—we conclude that Family Court's determination has a sound and substantial basis in the record (*see Matter of Sloand v Sloand, supra* at 785-787; *Matter of Adams v Franklin, supra* at 546).

The mother's remaining arguments do not require extended discussion. Her assertion that Family Court erred in awarding temporary custody of Sarah to the father is moot in light of the court's permanent custody determination (*see Matter of Nicotera v Nicotera*, 222 AD2d 892, 894 [1995]). Her claim that the court abused its discretion by failing to hold a second *Lincoln* hearing is contrary to her counsel's express confirmation of Family Court's understanding that she did not request a second *Lincoln* hearing and, in any event, there is no evidence that a second hearing would have provided additional useful information (*see Matter of Walker v Tallman*, 256 AD2d 1021, 1022 [1998], *lv denied* 93 NY2d 804 [1999]). Finally, the Law Guardian's strong expression of her position that custody should be granted to the father in light of the evidence herein was not inconsistent with her proper role in these proceedings (*see Matter of Carballeira v Shumway*, 273 AD2d 753, 756 [2000], *lv denied* 95 NY2d 764 [2000]), and the record does not otherwise support the mother's contention that the Law Guardian was impermissibly biased against her.

Peters, Spain, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, without costs.