■ In the Matter of TROY SS., Respondent, v JUDY UU., Appellant. (And Two Other Related Proceedings.) [894 NYS2d 186]—

Spain, J.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a son born in 1998. Upon divorcing in 2002, they stipulated to shared custody and equal parenting time. In January 2005, the father commenced this modification proceeding requesting sole custody alleging that the mother was exhibiting increasingly strange behavior and making poor decisions, that he was concerned about her mental

health and the safety of the child, then age six, and that the mother had recently become estranged from her two teenage daughters (born in 1987 and 1989, from another marriage) who had been placed in the custody of their maternal grandmother. Family Court signed an order to show cause on January 14, 2005 ordering a psychological evaluation of all parties and granting the father temporary custody of the child, which the court continued under a series of modified temporary orders. Following protracted proceedings (which began in January 2005 and continued until the court issued its decision in mid-2007), including the fact-finding hearing (spanning 2006-2007)—the court awarded the father sole legal and physical custody.[1] The mother—whose initial visitation was supervised by court order until the father consented to unsupervised visitation in August 2005, with overnight visits remaining supervised—was awarded unsupervised visitation every Thursday evening for three hours and on alternating weekends for nine hours on Saturday and 8 to 10 hours on Sunday, and a holiday visitation schedule was set. The father's request that the mother's visitation be supervised until completion of mental health counseling was rejected, while the mother's request (also advocated by the Law Guardian) for overnight visitation was denied.

Toward the end of the fact-finding hearing, Family Court held a sanction hearing addressed to the question of what role the mother's trial counsel had played in the improper disclosure to the mother and her treating psychiatrist, Stephen Hermele, of the court-ordered confidential psychological evaluation conducted by psychologist Claude Schleuderer; that evaluation of all of the parties and their families and its addendum (hereinafter the psychological evaluation) was memorialized in reports dated November 14, 2005 and January 30, 2006. Concluding that the mother's trial attorney was responsible for the disclosures in violation of a confidentiality stipulation entered on the record (in April 2005) by the mother's prior counsel, the court ruled that Hermele was precluded at the fact-finding hearing from testifying to his opinion or criticism of the psychological evaluation (which recommended sole custody to the father, with supervised visitation for the mother), but allowed Hermele to testify to his treatment and opinion of the mother's mental health.

---

**1.** In its decision, Family Court also dismissed the father's family offense petition, but the court's resolution of the father's violation petitions directed at the temporary custody and visitation orders is not apparent from the court's decision or order, or the record on appeal. The issues raised on appeal are not directed at those petitions and, thus, they will not be addressed.

At the fact-finding hearing, Hermele so testified in support of the mother; Schleuderer was not called to testify by either parent or the Law Guardian, but his psychological evaluation was admitted into evidence. The sanction decision is not directly before us on this appeal, except to the extent that the mother asserts that she was denied meaningful representation at the fact-finding hearing and (joined by the Law Guardian) that the mother and child were penalized for the perceived misconduct of the mother's trial attorney. The mother now appeals, through counsel and pro se, seeking a return to joint custody or increased visitation including overnight visitation. The child's appellate Law Guardian advocates in favor of overnight visitation with the mother or, in the alternative, remittal for additional testimony by Hermele.[2] The mother has also appealed Family Court's denial of her motion to vacate the modification order.

We are not persuaded by the mother's main contention on appeal, that the award of custody to the father and denial of overnight visitation to the mother lack a sound and substantial basis in the record. Initially, while Family Court in its 97-page custody decision made no express finding that the father had demonstrated the requisite significant change in circumstances indicating a real need to modify the stipulated custody order to further the child's best interests, the hearing record is complete and, upon our independent review authority, we find that the court's extensive factual findings are fully supported by the record and provide an ample basis for concluding that such a change in circumstances was proven here (*see Matter of Cree v Terrance*, 55 AD3d 964, 966-967 [2008], *lv denied* 11 NY3d 714 [2008]; *Matter of Bedard v Baker*, 40 AD3d 1164, 1165 [2007]).

The testimony at the hearing, including that of the father, his adult son, the maternal grandmother, the child's day-care provider, the mother's 19-year-old daughter, the mother's brother and the mother herself, established that the mother's behavior became increasingly inappropriate, uncooperative, hostile and paranoid, often in front of the child, beginning in October 2004 and continuing during the lengthy fact-finding hearing. This led to frequent heated confrontations with the father and other family members in the child's presence, particularly when custody of the child was being exchanged or routine matters pertaining to him were being discussed. The resulting deterioration in the parties' relationship and inability to communicate or coparent provided a significant change in circumstances and warranted revisiting the agreed-upon joint custody arrangement (*see Matter of Kilmartin v Kilmartin*, 44

---

2. The father has not submitted a responsive brief on appeal.

AD3d 1099, 1101 [2007]; *Posporelis v Posporelis*, 41 AD3d 986, 989 [2007]).

Turning to the primary concern in this matter, as with all child custody determinations, the best interests of the child, courts are required to consider all relevant factors, including "maintaining stability in the child's life, the wishes of the child, the quality of the home environment, each parent's past performance, relative fitness and ability to guide and provide for the child's intellectual and emotional development, and the effect the award of custody to one parent would have on the child's relationship with the other" (*Matter of Zwack v Kosier*, 61 AD3d 1020, 1022 [2009], *lv denied* 13 NY3d 702 [2009] [citations omitted]). Moreover, the parties' stipulated custody agreement is afforded less weight than an order following a plenary hearing and is only one factor to consider (*see Matter of Colwell v Parks*, 44 AD3d 1134, 1135 [2007]). Given Family Court's ability to observe the witnesses' demeanor and assess their credibility, "its factual findings are accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record" (*Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]).

First, the record reveals that continued joint custody has often required police intervention, would further harm this child and is unworkable (*see Matter of Williams v Williams*, 66 AD3d 1149, 1150-1151 [2009]). Further, the testimony of numerous witnesses who observed or interacted with the mother over a two-year or more period established that they were all concerned for her and the child. The mother's behavior had grown increasingly strange, unpredictable, confrontational and inappropriate, often in the child's presence, causing him fear, confusion, anxiety, humiliation and stress. Incidents occurred at his sporting events, during custody exchanges, at the parties' homes and those of family members and in public, in which the mother disparaged the father and other family members, publicly made wild unsupported accusations, greatly overreacted or acted out of control—screaming bizarre accusations—and said and did inappropriate things that were inevitably harmful to the child's overhearing ears. While a precise diagnosis was not established, the record overwhelmingly demonstrates that "the mother's mental state has directly affected her abilities as a parent" (*Matter of Sloand v Sloand*, 30 AD3d 784, 785 [2006]). Shortly after the father filed this petition, she was involuntarily committed to the mental health unit at a local hospital for $2\frac{1}{2}$ weeks when another family member reported her behavior and threats to the police; she was ultimately released following a hearing upon the determination that—at the time of the hear-

ing—she did not pose a danger. Hermele, who testified that his weekly treatment of the mother since May 2005 focused on her acute psychiatric problems—which he identified as lifelong anxiety disorder, phobic symptoms, posttraumatic stress, obsessive chronic worrying, reality problems, misperception of others and overreactions to situations—nonetheless opined that there was no psychiatric reason for limiting contact with the child. However, as Family Court pointed out, Hermele had never seen her interact with any of her family members or the child, and had never observed any of the alarming behavior to which nearly every one of the extended family members testified.

Schleuderer's initial psychological evaluation reflects that he interviewed[3] the mother, her two daughters and their father, the father, the child and the maternal grandmother; each of the parties herein was observed interacting with the child and his two sisters, and individually. Schleuderer concluded that the mother's "mental state significantly impairs her parenting capacity," that she needs psychotherapeutic treatment and that she verbalizes her delusions and accusations in front of the child despite knowledge that they are inappropriate. He recommended that the father be granted sole custody and that all contact between the child and mother be supervised. In his brief addendum report, Schleuderer recounted that the mother's other treating psychiatrist in 2005 tentatively concluded that she was "paranoid schizophrenic" although "99% of the time she is reality based."

With regard to the father, the evidence established that he is an electrician supervisor and had built a five-bedroom home during the trial where he, the child, his adult son and one of the mother's daughters reside. Family Court found that during the extended years of temporary custody, the father followed the mother's visitation provisions, encouraged the child's relationship with extended family, secured counseling to help the child cope with the turmoil, was involved in his activities and school—where his grades have been "very good"—and had assumed an "appropriate parental role" toward him. Schleuderer concluded that the father's relationship with the children was "exemplary," that he "has their best interests at heart" and that they feel "securely loved by him." The court found the mother's contrary testimony to be "unbelievable" at points, "evasive and inappropriately hostile," and we discern no basis upon which to

---

**3.** At the time of the evaluation, petitions were pending for custody of the mother's daughters in separate proceedings and, thus, they and their father were interviewed to allow completion of a comprehensive evaluation of all affected family members.

disturb the court's first-hand credibility determinations. The court's determination that the mother, if granted custody, would not foster a relationship between the child and the father (or extended family) is fully justified, particularly given the mother's threats to withhold contact between them.

Upon review of the record and considering all relevant factors (*see Matter of Zwack v Kosier*, 61 ADd at 1022), we find abundant support for Family Court's conclusion that an award of sole custody to the father best serves the child's interests. We have also carefully considered the requests of the mother and the child's attorney for overnight visitation, but do not find that the (now dated) record before us supports disturbing the court's implicit and discretionary conclusion that overnight visitation would be inimicable or detrimental to the child's welfare (*see Matter of Maziejka v Fennelly*, 3 AD3d 748, 749 [2004]). While the court should have expressly addressed this request, the record permits our doing so. Upon the exercise of our independent review powers, we find that the foregoing evidence regarding the mother's behavior and instability in the 2004-2006 period of time provides a sound and substantial basis for the denial of overnight visitation (*cf. Matter of Daniel v Pylinski*, 61 AD3d 1291, 1292-1293 [2009]; *Matter of Rivera v Tomaino*, 46 AD3d 1249, 1249-1250 [2007]).

The mother's counsel on appeal further argues that the mother was denied the effective assistance of trial counsel, a proposition the mother specifically rejects in her pro se brief in which she argues that the real prejudice is attributable to Family Court's alleged errors and bias against her. Upon careful review, we find that trial counsel provided aggressive, meaningful representation throughout these proceedings, and that the mother did not suffer actual prejudice as a result of the claimed deficiencies in counsel's advocacy or the court's sanction decision (*see Matter of Kemp v Kemp*, 19 AD3d 748, 751 [2005], *lv denied* 5 NY3d 707 [2005]; *cf. Matter of Martin v Martin*, 46 AD3d 1243, 1246-1247 [2007]).[4] The mother's counsel presented witnesses, including Hermele, who testified that she was capable of parenting the child without supervision, and we cannot

---

4. The sanction hearing and resulting 16-page decision were certainly an unnecessarily excessive distraction in this already protracted matter. However, we do not find that Family Court's ruling precluding Hermele from offering an *expert* opinion critiquing the psychological evaluation resulted in actual prejudice to the mother or constituted patent error. Nonetheless, once the court concluded that it would have allowed disclosure to Hermele or another expert had counsel requested it first, we see no real point in precluding Hermele's testimony simply because it was based upon the prematurely released psychological evaluation.

conclude that counsel's decision not to call Schleuderer himself for cross-examination or not to call another expert witness to counter Schleuderer's opinion regarding the mother's mental health constituted ineffective assistance, given the speculative benefit that such testimony would have had on the outcome (cf. *Matter of Martin v Martin*, 46 AD3d at 1246-1247).

Likewise, we are not persuaded by the mother's pro se claim that Family Court was, from the outset, biased against her, or by her appellate counsel's contention that the outcome was prejudiced by the court's scorn for her trial counsel's perceived misconduct or misstated legal arguments. Indeed, the court rejected Schleuderer's strong recommendation that all contact between the child and the mother be supervised (as the father had requested), based in part upon its conclusion that the mother had enjoyed "unsupervised visitation for some time without major repercussions to [the child's] well being." This reflects that the court was not unduly reliant upon Schleuderer's evaluation and, in fact, evenly considered all of the testimony and evidence in rendering its custody determination.

To the extent that the mother challenges Family Court's decision to sign an ex parte order to show cause at the outset of these proceedings on January 14, 2005 granting sole temporary custody to the father, the issuance of a permanent order of custody following a trial renders this issue moot (*see Posporelis v Posporelis*, 41 AD3d at 988). In any event, the father made a sufficient showing of extraordinary circumstances in his ex parte application (*see id.*), and the subsequent orders extending the father's temporary custody while progressively increasing the mother's parenting time were made after the mother, represented by counsel, had an opportunity to be heard.

Finally, contrary to the mother's pro se claims, Family Court did not abuse its discretion in denying her motion to vacate this custody determination based upon newly discovered evidence (*see* CPLR 5015 [a] [2]; *see also Maddux v Schur*, 53 AD3d 738, 739 [2008]). The mother, as movant, neither demonstrated that the "new" evidence could not have been discovered, with due diligence, prior to the conclusion of the trial nor that, had it been introduced at trial, it "would probably have produced a different result" (CPLR 5015 [a] [2]; *see Matter of Commissioner of Social Servs. of Ulster County v Powell*, 39 AD3d 946, 948-949 [2007], *lv dismissed* 9 NY3d 975 [2007]). While the mother submitted a letter from her prior counsel establishing that *he* had disclosed Schleuderer's November 2005 psychological evaluation report to Hermele, this only demonstrated Family Court's earlier error in attributing that disclosure to the

mother's trial counsel; it did not affect the court's conclusion that trial counsel had improperly disclosed the evaluation reports (original and addendum) *to the mother* and the addendum to Hermele. While clearing up one point, this proof did not establish that allowing Hermele to testify without restriction regarding Schleuderer's evaluations would have produced a different custody result. As to the remaining proof submitted on the motion, Family Court correctly concluded that it concerned "collateral matters which were not significant to the court's final determination." The remaining contentions have been thoroughly reviewed, and we find that none warrants disturbing Family Court's fully justified determination that the best interests of the child are served by granting custody to the father, with regular parenting time to the mother.

Mercure, J.P., Rose and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.