■ In the Matter of Hope E. Whitcomb, Appellant, v Claude D. Seward, Respondent. [926 NYS2d 764]—

Spain, J.

Petitioner (hereinafter the mother) and respondent (hereinafter the father), residents of Sullivan County who never married, are the parents of a daughter, born in 2000. Pursuant to a 2001 order of custody, entered upon consent, the parties had joint legal and shared physical custody; the child, then an infant, alternated living with each parent, three nights with the father (Saturday to Tuesday) and then four nights with the mother (Tuesday to Saturday). The mother was also given one full weekend per month, and the parties agreed to "share the [h]oliday[s] as mutually agreed" with specific provisions for birthdays and Mother's/Father's Day. Thereafter, the mother lived in various places including out of state, and the parties followed a different mutually agreed to schedule—never reduced to a court order—in which the child alternated two weeks with each parent. In 2005, the mother returned to Sullivan County. In 2007, the 2001 order was tentatively modified on the father's petition, by providing that joint legal custody would continue but, in the event the mother relocated, the father would be granted primary physical custody with a parenting time schedule outlined for the mother. The mother never relocated.

In April 2008, the mother commenced this proceeding for modification of the 2001 order, seeking primary physical custody of the child, then seven years old, to allow more time with the mother's family and the child's school friends, claiming that the father lacked the time and resources to maintain the child's

lifestyle. She requested that the father's parenting time be reduced to alternating weekends, which the father strongly opposed. After a two-day hearing and a *Lincoln* hearing with the child, Family Court continued joint legal custody, but modified the 2001 order to provide that the child will alternate weeks with each parent (Tuesday to Tuesday) to allow "each parent significant[,] uninterrupted parenting time with the child in approximately equal shares." The court also established a specific and comprehensive holiday/summer schedule, which is operative if the parties remain unable to agree on how to share this time. The mother now appeals, arguing that the court's modification order was an abuse of discretion because she is the "more suitable parent" and better able "to provide the child with a stable home." We disagree, and affirm.

As a threshold matter, "the alteration of an established custody arrangement will be ordered only upon a showing of a sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Passero v Giordano*, 53 AD3d 802, 803 [2008] [internal quotation marks and citations omitted]). Under that test, an order entered on consent, without a plenary hearing, is entitled to less weight (*see Redder v Redder*, 17 AD3d 10, 13 [2005]). While Family Court made no express finding on the existence of a change in circumstances, remittal is not necessary given that the hearing record is complete, the court made significant factual findings, and our Court has authority to independently review the record, which fully supports the existence of the requisite change in circumstances (*see Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1130 [2010], *lv dismissed and denied* 14 NY3d 912 [2010]; *Matter of Cree v Terrance*, 55 AD3d 964, 965-966 [2008], *lv denied* 11 NY3d 714 [2008]).

Foremost, the parties long ago effectively abandoned the parenting schedule in the 2001 order, having crafted various schedules as their circumstances changed (*see Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1101 [2007]). The 2001 order did not contain a detailed holiday/summer schedule, which the parties presently desire and need given their disagreement regarding how to resolve holidays falling during one parent's custodial time. Further, the parties developed materially differing parenting styles that now present some adverse consequences for the child; the mother scheduled the child for numerous daily organized activities, without consulting the father, which the child reportedly does not attend during her time with

the father,* causing detriment to the child. Adopting the court's factual findings, we find that a change in circumstances was demonstrated.

Family Court's determination modifying the parties' parenting time is supported by a sound and substantial basis in the record (*see Matter of Seacord v Seacord*, 81 AD3d 1101, 1104 [2011]). Since 2007, the parties had employed an irregular custodial schedule in which each month the child lived with her mother a total of 16 nights, including one weekend, and with her father 10 nights, including two consecutive weekends; while she spent only four consecutive nights away from her mother, she spent 10 consecutive nights without her father.

The proof at the hearing demonstrated that both parties love and care for the child; both desire to be with her as much as possible and cultivate her relationship with their own partners, parents and extended families. Neither raised allegations regarding the parenting skills or home environment of the other and both give the child significant attention during their custodial time, albeit in different manners. At the time of the 2008 hearing, the mother and her partner continued to live with her parents and teen sibling in a farmhouse in the Town of Bethel, Sullivan County; the child is close to her maternal grandparents. The mother and her partner, who traveled to his out of town job in alternating weeks, were under contract to purchase a four-bedroom home nearby in White Lake, Sullivan County; both homes are near the child's school. The mother, who had no other children, worked part time at a school and volunteered daily in the child's classroom. She scheduled the child in numerous structured activities, some requiring significant travel time, but did not discuss these commitments with the father, although they also fell on days when he had physical custody. She also engaged in a variety of additional one-on-one activities with the child and explained that she requested the custodial modification to create a more stable "home base," to prevent the child from missing her activities and to allow her more time with nearby school friends and more unscheduled mother-daughter time.

The father testified that he has stable full-time employment with some flexibility to work at home. He lived in a four-bedroom house about 20 minutes from the child's school, in Hurleyville, Sullivan County, with his partner of six years, a schoolteacher who has known the child most of her life, their

---

* The record is not clear whether the father had the necessary information or was requested to take the child to these activities during his custodial time, or his ability to do so.

infant son, and her children, ages 14 and 15; all relationships were described in positive terms. He drives the child to school when he has custody, and they typically spend their custodial time with the family having dinner, allowing the child free time to play or at the library or on day trips. He expressed some concern about the child's overloaded schedule of activities. He wished to continue taking the child for periodic weekend visits to his parents' out of town homes, which would have been unworkable under the mother's request to reduce his parenting time.

In determining the best interests of the child, Family Court appropriately took into consideration all relevant factors, including the child's wishes and need for stability, the nurturing home environments of both parents and their ability to provide for her overall well-being, each parent's past performance, fitness and ability to provide for her development and to guide her, and the child's close relationship with both family units and extended families (*see Matter of Troy SS. v Judy UU.*, 69 AD3d at 1131; *Matter of Kilmartin v Kilmartin*, 44 AD3d at 1102). The record supports the conclusion that joint legal and shared physical custody continues to be workable and in the child's best interests. Indeed, the evidence reveals that aside from some differences of opinion regarding holidays and the child's activities, there was a commendable degree of cooperation and the child has thrived (*cf. Matter of Troy SS. v Judy UU.*, 69 AD3d at 1131; *Matter of Kilmartin v Kilmartin*, 44 AD3d at 1101). In our view, the court's order of modification providing for alternating weekly parenting time and shared holidays represents a beneficial arrangement that will promote the child's well-being.

While the mother's desire to have more time with the child and to continue her full slate of scheduled and unscheduled activities to nurture her talents and interests are understandable, we cannot disagree with Family Court's implicit conclusion that the father's time and activities with the child are equally nurturing and beneficial. The court's order reasonably requires the parties to obtain the consent of the other before enrolling the child in any organized activity or committing her to activities that will take place during the other parent's custodial time, and requires the parties during their respective custodial times to insure the child's attendance thereat. This will reduce the confusion created by the former practice in which the mother unilaterally scheduled the child's weekly activities. The court's order fulfills the desirable objective of equalizing and regularizing the child's time in both of her homes while compelling both parents to recognize the limitations that

their circumstances have placed on her divided time. The best interests of the child were clearly achieved.

Finally, a review of the record as a whole does not support the argument of the appellate attorney for the child that the attorney representing her in Family Court failed to abide all of his ethical and representational obligations to his client (*see* Family Ct Act §§ 241, 249; 22 NYCRR 7.2; *see also Matter of Krieger v Krieger*, 65 AD3d 1350, 1352 [2009]).

We have considered the mother's remaining arguments and find them unavailing.

Mercure, J.P., Kavanagh, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.