# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**312**
**CA 13-01929**
PRESENT: CENTRA, J.P., PERADOTTO, CARNI, SCONIERS, AND DEJOSEPH, JJ.

---

KELLY G. SHERIDAN, PLAINTIFF-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

DAVID E. SHERIDAN, DEFENDANT-APPELLANT.
-----------------------------------------
KELLY M. CORBETT, ESQ., ATTORNEY FOR THE
CHILD, APPELLANT.
(APPEAL NO. 1.)

---

PHILLIPS LYTLE LLP, BUFFALO (MICHAEL B. POWERS OF COUNSEL), FOR
DEFENDANT-APPELLANT.

KELLY M. CORBETT, ATTORNEY FOR THE CHILD, FAYETTEVILLE, APPELLANT PRO
SE.

HANCOCK ESTABROOK, LLP, SYRACUSE (JANET D. CALLAHAN OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---

Appeals from an order of the Supreme Court, Onondaga County
(Kevin G. Young, J.), entered September 4, 2013. The order, among
other things, awarded plaintiff sole legal and physical custody of the
subject child.

It is hereby ORDERED that the order so appealed from is affirmed
without costs.

Memorandum: In appeal No. 1, defendant father and the appellate
Attorney for the Child (AFC) appeal from an order that, inter alia,
awarded sole custody of the subject 13-year-old child to plaintiff
mother and visitation to the father. In appeal No. 2, the father
appeals from an order that, inter alia, directed him to pay counsel
fees to the mother's attorney in the amount of $44,977.34, directed
him to pay sanctions in the amount of $7,000, and directed the
father's attorney to pay sanctions in the amount of $3,000.

The father contends in appeal No. 1 that he did not receive a
fair trial because of certain "errant" evidentiary rulings. We agree
with the father that Supreme Court improperly curtailed his cross-
examination of the court-appointed expert (*see* CPLR 4515); erred in
prohibiting him from calling the child's therapist as a rebuttal
witness; and erred in admitting certain EZ-Pass records because "[a]
proper foundation for [their] admission . . . [was not] provided by
someone with personal knowledge of the maker's business practices and

procedures" (*Palisades Collection, LLC v Kedik*, 67 AD3d 1329, 1330-1331 [internal quotation marks omitted]; *see also KG2, LLC v Weller*, 105 AD3d 1414, 1415), and there was no indication that the records were certified to comply with CPLR 4518 pursuant to CPLR 3122-a.  We conclude, however, that those errors are harmless inasmuch as the excluded evidence " 'would [not] have had a substantial influence on the outcome of the case' " (*Nationstar Mtge.*, *LLC v Davidson*, 116 AD3d 1294, 1296, *lv denied* 24 NY3d 905), and the errors " 'did not adversely affect a substantial right of the [father]' " (*Cor Can. Rd. Co., LLC v Dunn & Sgromo Engrs., PLLC*, 34 AD3d 1364, 1365; *Shahram v Horwitz*, 5 AD3d 1034, 1035).

Contrary to the father's further contention in appeal No. 1, the court did not err in admitting in evidence the reports of the court-appointed expert pursuant to 22 NYCRR 202.16 (g) (2).  Although the reports themselves were not submitted "under oath" as required by that regulation, the expert was subsequently called, she testified under oath, and she was available for cross-examination (*cf. Matter of Kranock v Ranieri*, 17 AD3d 1104, 1105, *lv denied* 5 NY3d 709; *see generally Posporelis v Posporelis*, 41 AD3d 986, 992).

The father and the AFC further contend in appeal No. 1 that the court's custody determination is not in the child's best interests and that the court failed to give appropriate weight to the child's desire to live with the father.  In making a custody determination, "the court must consider all factors that could impact the best interests of the child, including the existing custody arrangement, the current home environment, the financial status of the parties, the ability of [the parties] to provide for the child's emotional and intellectual development and the wishes of the child . . . No one factor is determinative because the court must review the totality of the circumstances" (*Matter of Cross v Caswell*, 113 AD3d 1107, 1107 [internal quotation marks omitted]).  A court's custody determination, including its evaluation of a child's best interests, is entitled to great deference and will not be disturbed as long as it is supported by a sound and substantial basis in the record (*see id.* at 1107-1108; *see also Matter of Thillman v Mayer*, 85 AD3d 1624, 1625).

"Here, although there are several factors that militate in favor of awarding custody to the [father]," we conclude that the court's determination that it is in the best interests of the child to remain in the custody of the mother is supported by a sound and substantial basis in the record (*Cross*, 113 AD3d at 1107).  As noted by the court-appointed expert, a potential move from his mother's residence in Syracuse to his father's residence in Buffalo would put the child "at risk of experiencing a tremendous sense of loss and disruption" because he is "connected to his school[,] his mom[,] his community[,] his neighborhood[,] his friends and his pursuits [in Syracuse]." Furthermore, while we agree with the father and the AFC that the child's "wishes . . . [were] entitled to great weight, particularly where[, as here, his] age and maturity . . . make[s his] input particularly meaningful" (*Matter of Stevenson v Stevenson*, 70 AD3d 1515, 1516, *lv denied* 14 NY3d 712 [internal quotation marks omitted]), the court acknowledged the factor, and deemed it to be significant,

but noted why it was not entitled to the type of consideration that the father and the AFC had requested.  Because the wishes of the child are "not . . . determinative," we perceive no error in how the court addressed that factor (*Dintruff v McGreevy*, 34 NY2d 887, 888).

Contrary to the AFC's contention in appeal No. 1 that the AFC at the trial level did not properly present the child's wishes to the court, we conclude that the AFC at the trial level fulfilled her representational obligations by voicing the child's wishes directly to the court without recommending any finding to the contrary.  In addition, we note that the court held two *Lincoln* hearings, and the AFC did not prevent the child from voicing his wishes to the court (*see* 22 NYCRR 7.2 [d]; *Matter of Rosso v Gerouw-Rosso*, 79 AD3d 1726, 1728; *see also Matter of Gloria DD. [Brenda DD.]*, 99 AD3d 1044, 1046-1047; *Matter of Whitcomb v Seward*, 86 AD3d 741, 745).

Contrary to the father's further contention in appeal No. 1, with deference to the "court's determination and its 'firsthand assessment' of the parties," we cannot conclude that the court erred in fashioning a visitation schedule (*D'Ambra v D'Ambra* [appeal No. 2], 94 AD3d 1532, 1534).  The court's creation of two equal Christmas visitation periods, which alternate annually, was an appropriate exercise of its discretion.  In addition, the court appropriately exercised its discretion in providing for flexible weekday visitation to take into account the child's participation in extracurricular activities.  We therefore see no basis to disturb the visitation schedule fashioned by the court (*see Matter of Rought v Palidar*, 6 AD3d 1112, 1112).

Lastly, with respect to appeal No. 2, we conclude that the court abused its discretion in awarding sanctions inasmuch as the conduct of the father and his counsel was not "frivolous" as defined in 22 NYCRR 130-1.1 (c) (*see Kimmel v State of New York*, 115 AD3d 1323, 1325), and we therefore modify the order accordingly.  We further conclude that the court did not abuse its discretion in ordering the father to pay the mother's attorney's fees (*see Decker v Decker*, 91 AD3d 1291, 1291).  We note, however, that there is a mathematical error in the computation of the award of attorney's fees, which should be reduced by $6,330.55, for a total of $38,646.79, and we therefore further modify the order accordingly.

All concur except CENTRA, J.P., and PERADOTTO, J., who dissent and vote to modify in accordance with the following memorandum:  We respectfully dissent in appeal No. 1 because, in our view, Supreme Court's determination awarding sole legal and physical custody of the parties' child to plaintiff mother lacks a sound and substantial basis in the record (*see Matter of Bryan K.B. v Destiny S.B.*, 43 AD3d 1448, 1449).  We would therefore modify the order in appeal No. 1 by awarding sole custody to defendant father with visitation to the mother and remit the matter to Supreme Court for a different justice to fashion an appropriate visitation schedule (*see id.* at 1451; *see also Sitts v Sitts*, 74 AD3d 1722, 1723-1724, *lv dismissed* 15 NY3d 833, *lv denied* 18 NY3d 801).  We agree with the majority's resolution of appeal No. 2.

Although, as a general rule, the custody determination of a trial court is entitled to great deference (*see Eschbach v Eschbach*, 56 NY2d 167, 173-174), "[s]uch deference is not warranted . . . where[, as here,] the custody determination lacks a sound and substantial basis in the record" (*Fox v Fox*, 177 AD2d 209, 211-212; *see Sitts*, 74 AD3d at 1723). Ultimately, we must determine what is in the child's best interests " 'and what will best promote [his] welfare and happiness' " (*Eschbach*, 56 NY2d at 171). In making that determination "numerous factors are to be considered, including the continuity and stability of the existing custodial arrangement, the quality of the child's home environment and that of the parent seeking custody, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, and the individual needs and expressed desires of the child" (*Bryan K.B.*, 43 AD3d at 1450 [internal quotation marks omitted]; *see Eschbach*, 56 NY2d at 171-173).

In our view, the court erred in weighing those important factors, and its determination, therefore, lacks a sound and substantial basis in the record. Most glaringly, the court failed to give sufficient weight to the child's preference to live with the father (*see Matter of Rivera v LaSalle*, 84 AD3d 1436, 1437-1439). As the majority acknowledges, the expressed wishes of the child are "entitled to great weight" in light of his age and relative maturity (*Veronica S. v Philip R.S.*, 70 AD3d 1459, 1460; *see Matter of Mercado v Frye*, 104 AD3d 1340, 1342, *lv denied* 21 NY3d 859).

The child, who was already 13 at the time of the court's order in appeal No. 1, is now 15 years old. For the last six years, he has consistently expressed his desire to live with his father, and the Attorney for the Child on this appeal asserted in her brief and at oral argument that the child still wants to live with his father. The child's preference was expressed to the court-appointed custodial evaluator in his mother's presence. The custodial evaluator agreed that the child's disclosure in front of his mother was an indication that his preference was genuine. In addition, the custodial evaluator testified that the child's preference did not appear to be the result of influence or coercion by the father (*cf. generally Eschbach*, 56 NY2d at 173). Although the custodial evaluator further testified that the child's preference reflected "his wish to be loyal to the father [and] his wish to have his father be happy," we do not view such loyalty and attachment as a reasonable basis for disregarding the child's preference and maintaining custody with the mother.

The court's determination also lacks a sound and substantial basis in the record insofar as that determination is based on the conclusion that the mother was better equipped to handle the child's psychological and emotional needs. Although the mother has been the child's primary custodial parent for many years, her relationship with him has substantially deteriorated. The record reflects the mother's inability to handle the normal challenges of raising a teenager and her apparent failure to deal with those challenges without the use of force or profanity. The mother's difficulty in dealing with the child is further demonstrated by the fact that she was often compelled to

resort to contacting the father or others to assist in controlling the child's outbursts or "to get [the child] to do things."  The custodial evaluator testified that the father, unlike the mother, had "no issues controlling [the child's] conduct."  The progressively deteriorating and antagonistic relationship between the child and his mother is further evidenced by incidents in which the child kicked a hole in a wall at his mother's house and threw a phone at his mother.  The antagonism between the child and his mother demonstrates "a total breakdown in communication . . . requir[ing] a change in custody" (*Eschbach*, 56 NY2d at 172; *see Matter of Maute v Maute*, 228 AD2d 444, 444-445).

The total breakdown in communication is further exemplified by evidence of the mother's physical violence against the child, and the court failed to address and adequately account for the undisputed evidence of physical confrontations between the mother and the child. For example, the mother admitted to slapping the child's face "[a] couple times" when he "got[ ] mouthy," disrespectful, or rude, and she testified that she was justified in striking the child for that reason.  The court was required to consider the effect of domestic violence upon the best interests of the child (*see Matter of Moreno v Cruz*, 24 AD3d 780, 781, *lv denied* 6 NY3d 712, quoting Domestic Relations Law § 240 [1]), and it failed to do so here.  We conclude that the evidence of domestic violence further supports an award of sole custody to the father (*see Moreno*, 24 AD3d at 781; *see also Matter of Caughill v Caughill*, 124 AD3d 1345, 1347).

The court also determined that the mother was more able and willing to meet the child's educational needs.  During the academic year before the mother commenced her action for divorce, when the child was in second grade, the child achieved a final grade of A in all of his academic subjects.  Since then, he has received more B and C grades primarily, it seems, because of a lack of discipline and focus.  Whatever the reason, be it the ineffectiveness of the mother or the rebellion of the child, it is undeniable that his academic performance has declined while the mother has been the primary custodian.

"It is well settled that '[t]he authority of the Appellate Division in matters of custody is as broad as that' of the trial court" (*Sitts*, 74 AD3d at 1723, quoting *Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947).  "[W]here . . . the record is sufficient for this Court to make a best interests determination . . . , we will do so in the interests of judicial economy and the well-being of the child" (*Caughill*, 124 AD3d at 1346 [internal quotation marks omitted]).  We conclude that the record, which includes two *Lincoln* hearings, is sufficient for us to make a best interests determination here (*see Matter of Cole v Nofri*, 107 AD3d 1510, 1512, *appeal dismissed* 22 NY3d 1083) and, upon review of the relevant factors, we further conclude that it is in the child's best interests to award sole legal and physical custody to the father.

Finally, we note that the evidence to support an award of custody

to the father would likely have been even stronger had the trial level attorney for the child (AFC) properly acted as an advocate for her client.  Contrary to the position of the majority, we conclude that the AFC "failed to fulfill [her] essential obligation" to her client (*Matter of Mark T. v Joyanna U.*, 64 AD3d 1092, 1095).  The Rules of the Chief Judge provide that an AFC "must zealously advocate the child's position . . . even if the [AFC] believes that what the child wants is not in the child's best interests," unless the AFC "is convinced either that the child lacks the capacity for knowing, voluntary and considered judgment, or that following the child's wishes is likely to result in a substantial risk of imminent, serious harm to the child" (22 NYCRR 7.2 [d] [2], [3]; *see Matter of Swinson v Dobson*, 101 AD3d 1686, 1687, *lv denied* 20 NY3d 862).  Because neither exception allowing the AFC to substitute her own judgment for that of the child is implicated here, she was obligated to zealously advocate the child's position (*see Swinson*, 101 AD3d at 1687; *Mark T.*, 64 AD3d at 1095; *cf. Matter of Rosso v Gerouw-Rosso*, 79 AD3d 1726, 1728), and she failed to do so.

Despite the child's consistently expressed desire to live with the father, at trial the AFC objected repeatedly during direct-examination of the father and cross-examination of the mother, but did not object during direct examination of the mother or cross-examination of the father.  The AFC also called as a witness a custodial evaluator whose recommendation was directly contrary to the child's preference to live with the father.  We cannot agree with the majority that the AFC fulfilled her obligation to her client by merely informing the court of the child's wishes "without recommending any finding to the contrary."  In our view, the AFC merely parroted the child's position to the court in a perfunctory fashion, and did not fulfill her ethical obligation to act as a zealous advocate for the child and to give voice to the child's wishes (*see* 22 NYCRR 7.2 [b], [d]; *see generally Mark T.*, 64 AD3d at 1094-1095; *Matter of Dominique A.W.*, 17 AD3d 1038, 1039-1040, *lv denied* 5 NY3d 706).  The AFC's inadequate representation of the child at the trial level further justifies reversing the court's custody determination in appeal No. 1.

Entered:  June 19, 2015                          Frances E. Cafarell
                                                 Clerk of the Court