Kaleta v Kaleta (2024 NY Slip Op 01650)

Kaleta v Kaleta

2024 NY Slip Op 01650

Decided on March 22, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 22, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, GREENWOOD, AND NOWAK, JJ.

210.1 CA 23-00597

[*1]PATRICK KALETA, PLAINTIFF-RESPONDENT,
v
ASHLEY KALETA, DEFENDANT-APPELLANT. 

MATTINGLY CAVAGNARO LLP, BUFFALO (CHRISTOPHER S. MATTINGLY OF COUNSEL), FOR DEFENDANT-APPELLANT.
JAMES P. RENDA, WILLIAMSVILLE, COHEN CLAIR LANS GREIFER & SIMPSON LLP, NEW YORK CITY (DAVID V. SANCHEZ OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Emilio Colaiacovo, J.), entered September 22, 2022. The order, inter alia, granted plaintiff primary physical custody of the subject child. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law and facts without costs, the motion of defendant is granted insofar as it sought primary physical custody of the parties' child, the motion of plaintiff is denied insofar as it sought the same relief, and the matter is remitted to Supreme Court, Erie County, for further proceedings in accordance with the following memorandum: In this postjudgment matrimonial proceeding, plaintiff father and defendant mother each moved for an order directing, inter alia, that the custody arrangement established by their property settlement agreement (settlement agreement), which was incorporated but not merged into the judgment of divorce, be modified by awarding the movant primary physical custody of the parties' child. The mother now appeals from an order that, inter alia, granted the father primary physical custody of the child. We agree with the mother that Supreme Court's determination lacks a sound and substantial basis in the record.
The parties separated when the child was one year old, at which time the mother moved from the parties' shared residence in the Buffalo area to the Syracuse area. The parties have shared joint custody of the child, with neither party designated as the primary residential parent, since that separation. The settlement agreement provided that this custody arrangement would continue until the child became old enough to attend grammar school, at which point the parties would attempt to reach agreement as to the parent with whom the child would primarily reside for the purpose of attending school. In the event the parties could not agree, the settlement agreement provided that the parties would seek judicial intervention without the necessity of showing a change in circumstances.
In making a custody determination, " 'the court must consider all factors that could impact the best interests of the child, including the existing custody arrangement, the current home environment, the financial status of the parties, the ability of [the parties] to provide for the child's emotional and intellectual development and the wishes of the child . . . No one factor is determinative because the court must review the totality of the circumstances' " (Sheridan v Sheridan, 129 AD3d 1567, 1568 [4th Dept 2015]; see Eschbach v Eschbach, 56 NY2d 167, 171-173 [1982]). A court's evaluation of a child's best interests is entitled to great deference and will not be disturbed as long as it is supported by a sound and substantial basis in the record (see Sheridan, 129 AD3d at 1568; Matter of Thillman v Mayer, 85 AD3d 1624, 1625 [4th Dept 2011]).
Initially, we agree with the court that both parties are "fit parents" with "stable homes" who are "dedicated to guiding their child's well-being." The record also reflects that both parties have shown a willingness to coparent and foster the child's relationship with the other party for the benefit of the child. In determining that the child's primary physical custody should be awarded to the father, however, the court gave undue weight to the mother's residence in the Syracuse area. Although a parent's unilateral determination to move a child away from the other parent would be a factor for a court's consideration (see Matter of Tekeste B.-M. v Zeineba H., 37 AD3d 1152, 1153 [4th Dept 2007]), the record here does not support the court's conclusion that the mother intentionally disregarded the child's best interests and interfered with the child's ability to bond with the father by moving away from the Buffalo area. Instead, the record establishes that, four years prior to the instant proceeding, the mother relocated with the father's full knowledge out of practical necessity, at which time the parties established a plan for relatively equal access of each parent to the child. Further, by focusing almost exclusively on its own expectation that the mother should move back to the Buffalo area, a scenario neither anticipated by the parties' settlement agreement nor realistically available to the mother on this record, the court failed to make "a careful and studied review of all the relevant factors" (Eschbach, 56 NY2d at 174), including the child's significant ties to the Syracuse area. We remind the court that " 'an award of custody must be based on the best interests of the child[ ] and not a desire to punish a[n allegedly] recalcitrant parent' " (Tekeste B.-M., 37 AD3d at 1153; see Verity v Verity, 107 AD2d 1082, 1084 [4th Dept 1985], affd 65 NY2d 1002 [1985]). We are also compelled to remind the court that the disclosure of any statement made by a child during a confidential Lincoln hearing is improper, regardless of how innocuous that statement may appear to be (see Matter of Carter v Work, 100 AD3d 1557, 1558 [4th Dept 2012]; Matter of Spencer v Spencer, 85 AD3d 1244, 1246 [3d Dept 2011]).
Upon our review of the record, we conclude that the court's determination to award primary physical custody to the father lacks an evidentiary basis in the record (cf. Matter of DeVore v O'Harra-Gardner, 177 AD3d 1264, 1266 [4th Dept 2019]). The evidence presented at the hearing established that the mother's weekday and daytime work schedule more closely aligns with the child's school schedule. Although the mother's work day will start earlier than the child's school day, the mother testified to the specific arrangements that she had made to allow the child to have a consistent routine in the morning. In contrast, the father testified that his work schedule includes at least two weeknight commitments and frequent out-of-town travel on weekends during the majority of the school year. The father had no specific plan for child care during those times, but instead he speculated that the then-five-year-old child could either come with him to work, stay with relatives in the Buffalo area, or even be returned to the mother. We conclude that, despite the fitness of both parents, it is in the best interests of the child to award primary physical residence of the child to the mother. We therefore reverse the order and we remit the matter to Supreme Court to fashion an appropriate visitation schedule with the father.
In light of our determination, we do not address the mother's remaining contention.
Entered: March 22, 2024
Ann Dillon Flynn
Clerk of the Court